**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOOTSIE ROLL INDUSTRIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TOOTSI IMPEX, INC. and TOOTSI IMPEX USA, INC., <br><br> Defendants. | Civil Action No. 1:25-cv-10995 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Tootsie Roll Industries, LLC ("TRI") ("Plaintiff" or "TRI"), by and through its undersigned counsel, for its Complaint against Tootsi Impex, Inc. and Tootsi Impex USA, Inc. (collectively, "Defendants" or "Impex"), alleges as follows:

## INTRODUCTION

1.      TRI is a world-famous company involved in the manufacture of confectionery products under a variety of well-known trademarks, including a family of famous TOOTSIE trademarks. For over a century, TRI and its predecessors-in-interest have manufactured and sold candy under the TOOTSIE trademarks. Through extensive use and promotion, and tremendous success in the marketplace, TRI's TOOTSIE trademarks have become famous among consumers and enjoy enormous goodwill. In addition to its strong common law rights, TRI owns many federal trademark registrations for its TOOTSIE Trademarks, which have achieved incontestability.

2.      This action arises out of the Defendants' improper business practices concerning their unauthorized adoption and use of the mark TOOTSI to sell candy, confectionary and related products in direct competition with TRI.

- 1 -

3.     In 2005, Impex filed an application to register a TOOTSI design mark in Canada. TRI opposed the application and voiced its strong objection to Impex's use of TOOTSI to sell candy. In response, Impex abandoned its application. TRI understood that Impex abandoned its plans to use the TOOTSI mark. Unbeknownst to TRI, Impex had no such plans. Instead, it continued to use the TOOTSI design mark that TRI had objected to, it expanded its business into the United States, and in recent years, it progressively encroached into TRI's market—practically dropping its use of "Impex" in favor of TOOTSI alone, expanding its product offerings to include more and more candy, and prominently exhibiting at the largest candy trade show in North America, close to TRI's booth. Impex's increased market presence became known to TRI, and TRI promptly took action to protect its valuable TOOTSIE trademark and brand, which has grown over the past 125 years into an American icon. Faced with Impex's intransigence and refusal to stop infringing on TRI's famous TOOTSIE trademark, TRI brings this action to protect its brand.

## NATURE OF SUIT

4.     This is an action for: (1) infringement of TRI's federally registered marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (2) federal unfair competition and false designation of origin, association, and endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) dilution by blurring in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (4) deceptive trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq.; (5) dilution in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65; and (6) unfair competition in violation of Illinois' common law of unfair competition.

5.     TRI brings this action to halt and prevent confusion, mistake, and deception as to source, affiliation, or sponsorship of Impex's candy, confectionary and related products caused by Impex's infringement and dilution of TRI's trademark rights.

6.     TRI seeks both injunctive and monetary relief for Impex's deliberate efforts to wrongly profit and otherwise benefit from the goodwill TRI has established in its trademarks.

## THE PARTIES

7.     Plaintiff TRI is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 7401 South Cicero Avenue, Chicago, Illinois 60629.

8.     On information and belief, Defendant Tootsi Impex, Inc. is a company organized and existing under the laws of Quebec, Canada, having a place of business at 8800 Henri-Bourassa Boulevard, Montreal, Quebec H4S1P4 Canada. On information and belief, Tootsi Impex, Inc. regularly conducts business throughout the United States, including within this judicial district.

9.     On information and belief, Defendant Tootsi Impex USA, Inc. is a company organized and existing under the laws of the State of New Jersey, having a place of business at 28 Valley Road, Suite 1, Montclair, NJ 07042. On information and belief, Tootsi Impex USA, Inc. regularly conducts business throughout the United States, including within this judicial district.

## JURISDICTION AND VENUE

10.     This action arises under the Trademark and Unfair Competition Laws of the United States (15 U.S.C. § 1051 et seq.) and the statutory and common law of the State of Illinois, including claims arising under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq.; and the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, a substantial part of the property that is the subject of the action is situated in this judicial district, and Plaintiff is suffering harm in this judicial district.

13.     Personal jurisdiction over the Defendants is proper in this Court in part because, on information and belief, Defendants regularly conduct business, directly and indirectly, within the State of Illinois and because the injury caused by Impex's illegal activities occurs in this judicial district.

14.     Personal jurisdiction and venue are also proper in this Court because Impex intentionally advertises, sells, and provides its infringing goods and services in the State of Illinois and in this judicial district, via Impex's interactive website, www.tootsi.com, which is accessible to residents of the State of Illinois.

15.     Personal jurisdiction and venue are also proper in this Court because Impex maintains a warehouse within this judicial district, at 5000 West Proviso Drive, Unit #2, Melrose Park, IL 60163.

## FACTUAL BACKGROUND

## I.     Plaintiff TRI and Its Trademarks

16.     TRI's predecessor-in-interest first used the TOOTSIE trademark in United States commerce in the early 1900s. Since then, the TOOTSIE trademark and formatives thereof have been used continuously in the United States by TRI and its predecessors, affiliates, and licensees.

17.     TRI is the owner of, among others, the following federally registered trademarks and the U.S. Trademark Registrations for the same, and the common law rights and goodwill associated therewith:

| Trademark | Reg. No. | Goods |
|---|---|---|
| TOOTSIE ROLLS | 949931 | Candy |
| TOOTSIE ROLL MIDGEE | 949937 | Candy |
|  | 623182 | Candy |
| TOOTSIE ROLL | 963446 | Toy banks |
| TOOTSIE | 1080381 | Plastic containers for candy |
|  | 1302714 | Tank Tops, Sweatshirts, Shorts |
|  | 1342996 | Candy |
|  | 1324905 | Candy |

| Trademark | Reg. No. | Goods |
|---|---|---|
| TOOTSIE ROLL | 1369332 | Candy |
| TOOTSIE ROLL | 5396471 | Hot cocoa powder |
|  | 1434879 | Candy |
|  | 1468554 | Candy |
| TOOTSIE POPS | 292927 | Candy |
|  | 1551157 | Candy, namely lollipops |
|  | 0075218 | Chocolate candy |
| TOOTSIE ROLL POPS | 1635634 | Lollipops |
| TENDER TOOTSIES | 1725793 | Footwear |
| TOOTSIE ROLL | 1988251 | House mark for candy |
| TOOTSIE TARTS | 2402373 | Candy |

| Trademark | Reg. No. | Goods |
|---|---|---|
| TOOTSIE | 2536259 | Candy |
|  | 4750361 | Candy |
| TOOTSIE FRUIT CHEWS | 7450270 | Candy |
| TOOTSIE ROLL POP | 3026576 | Underwear, camisoles, pants, shirts, sweatshirts, jerseys, stockings, socks, footwear, shorts, pajamas |
| TOOTSIE FRUIT ROLLS | 3323806 | candy |

18.    The above trademarks are valid, subsisting, and in full force and effect. Copies of the trademark registration certificates for the above-listed marks are attached as **Exhibit A**.

19.    Pursuant to 15 U.S.C. § 1115(b), each of the above-identified trademarks has attained incontestability status, which constitutes conclusive evidence of the validity of the registered marks and of the registration of the marks, of TRI's ownership thereof, and of TRI's exclusive right to use the marks in commerce in connection with the goods specified in the registrations.

20.    As a result of TRI's extensive advertising, promotion, and use of the marks identified in paragraph 177 for candy and a variety of other goods and related services, those marks have become famous source indicators for TRI's products. Hereinafter, these marks shall be referred to collectively as the "TOOTSIE Marks."

21.     TRI sells its candy and confectionary products, directly or through food and grocery brokers, to wholesale distributors, supermarkets, variety stores, dollar stores, chain grocers, drug chains, discount chains, cooperative grocery associations, mass merchandisers, warehouse and membership club stores, vending machine operators, e-commerce merchants, the U.S. military and fund-raising charitable organizations, through business to business ("B2B") transactions, throughout the United States and within this judicial district. Many of TRI's business customers are small retailers, such as mom-and-pop stores and candy stores who purchase TRI products from outlets or retailers such as Sam's Club, and then display and sell TRI's products in their stores alongside other brands of candy, confectionary and snack products, such as nuts. TRI also sells its candy and confectionary products through distributors and to re-baggers, who buy candy in bulk, re-bag it (sometimes with candy products of other manufacturers), and sell it to small retailers, such as mom-and-pop stores and candy stores. TRI also sells its products directly to consumers through its own website and on Amazon.

22.     TRI has licensed its famous TOOTSIE Marks to others for use in connection with a variety of goods sold under the TOOTSIE Marks.

23.     TRI spends in excess of $5 million annually advertising and promoting its candy and confectionary products under the TOOTSIE Marks.

24.     For decades, TRI has promoted its candy and confectionary products at trade shows throughout the United States. The largest trade show in North America for the confectionary and snacks industries is the Sweet & Snacks Expo, which is held annually at different locations in the United States and Canada. TRI has exhibited at the Sweet & Snack Expo since at least as early as 1997, when the show was called the "All Candy Expo." TRI typically has a heavy presence at the Sweets & Snacks Expo. TRI has a large and prominent booth, with signage prominently featuring

the TOOTSIE trademark, and displays of the candy and confectionary products that TRI sells under the TOOTSIE Marks. TRI typically has more than 50 people walking the floor of the Sweet & Snacks Expo looking for competitive products and monitoring for infringements.

25.     TRI's revenues from products sold in connection with its iconic TOOTSIE Marks over the past century, both from its own sales and from licensing fees, have exceeded billions of dollars.

26.     The TOOTSIE Marks are integral to TRI's business, and TRI will suffer irreparable harm if any third parties sell infringing goods under marks identical or confusingly similar to the TOOTSIE Marks. Similarly, TRI will suffer irreparable harm if parties falsely purport to have a business association or affiliation with TRI.

27.     In addition, TRI maintains and operates several active social media accounts to promote and advertise Tootsie Roll-branded goods. These social media accounts have significant reach, with TRI's official Instagram account (@tootsieroll) having 185,000 followers, official Facebook account (@tootsieroll) having 1.6 Million followers, and official X (formerly Twitter) account (@Tootsie Roll) having nearly 69,000 followers.

28.     The Tootsie Roll brand has become famous and highly visible across the general consuming public. As a result, the goods bearing the TOOTSIE Marks have been and remain in high demand by consumers of all ages from all demographics. As a result of TRI's extensive advertising and promotional activities which emphasize the distinctive TOOTSIE Marks, and further as a result of TRI's substantial sales, the distinctive TOOTSIE Marks have become well and favorably known to the purchasing public and widely recognized as indicating the source or origin of TRI's products.

29.     Every genuine product bearing the TOOTSIE Marks is manufactured to the highest quality standards.

30.     As a result of TRI's exclusive, extensive, and continuous use of the TOOTSIE Marks, they have acquired significant value and have become well-known to the consuming public and trade as exclusively identifying and distinguishing TRI as the source of products offered under the TOOTSIE Marks. The recognition, renown, and fame of the TOOTSIE Marks have caused products bearing the TOOTSIE Marks to be in significant demand.

## II.     Defendant Impex's Acts of Infringement and Unfair Competition

31.     Defendant Tootsi Impex, Inc. is a Canadian company that states on its website that it was founded in Quebec in 1986 as a small cash-and-carry store. Tootsi Impex, Inc. registered as a corporation in Canada in 1995. On information and belief, it originally was a small supplier of organic nuts and snack foods in Canada.

### A.     The 2005 Trademark Dispute Between TRI and Impex

32.     TRI first became aware of Tootsi Impex, Inc. in around October 2005, when Impex's Canadian Trademark Application No. 1223946 for "Peanut & Me Design," depicted below, was advertised by the Canadian Trademark Office to give the public the opportunity to oppose the application (the "TOOTSI Design Mark").



33.     Impex's Canadian application was filed on July 16, 2004 for "organic peanuts, organic nuts, dried fruits, chocolates and conventional nuts and dried fruit" on an intent-to-use basis, which suggests that the mark was not yet being used in commerce.

34.     TRI objected to Impex's plan to use a nearly identical mark, TOOTSI, in connection with candy and snack food products. And so, on December 5, 2005, TRI filed an Opposition against Impex's Canadian application for the TOOTSI Design Mark.

35.     TRI and Impex engaged in settlement discussions, which, among other things, included a demand that Impex refrain from using TOOTSI in connection with candy.

36.     During those settlement discussions, in May 2006, Impex expressly abandoned its Canadian application for the TOOTSI Design Mark. As a result, TRI understood that Impex had abandoned any plans to use TOOTSI in connection with the sale of candy or snack products. At that time, Impex did not communicate to TRI that, despite abandoning its trademark application, it would continue to use the TOOTSI mark, let alone to use it in the United States and in connection with candy.

37.     Impex did not file an application to register TOOTSI or any variation of TOOTSI as a word mark in the United States or Canada.

38.     From 2006 through 2025, TRI was unaware of any activities of Impex.

III.    **Impex's Expansion and Progressive Encroachment on TRI's Market**

39.     As it turned out, unknown to TRI and much to its chagrin, Impex did not abandon its planned use of TOOTSI. Instead, in recent years, Tootsi Impex, Inc. changed its business operations in several ways to compete directly with TRI in the United States and Canada and to trade on TRI's reputation, including (1) by forming a related corporate entity in the United States to expand its U.S. operations; (2) by changing its website URL from www.tootsiimpex.com to www.tootsi.com; (3) by exhibiting at the largest candy trade show in North America in close proximity to TRI; (4) by expanding its product offerings of candy and confectionary products; and

(5) by offering TRI candy products (midgees) for sale on its website under its own TOOTSI banner.

### A. Impex Forms a U.S. Entity

40. In 2019, Impex formed a related United States corporation, Tootsi Impex USA, Inc., which is based in Montclair, New Jersey.

### B. Impex Changes Its Website to TOOTSI.com

41. On information and belief, prior to 2018, Impex marketed and sold its products on its website using the URL, www.tootsiimpex.com. On information and belief, to reinforce the false association between Impex and TRI, Impex moved away from TOOTSI IMPEX and towards TOOTSI alone. Hence, Impex started to use the URL, www.tootsi.com, instead of www.tootsiimpex.com. On information and belief, Impex did this because it wants to be known as TOOTSI.

### C. Impex Prominently Exhibits at Candy Trade Show as TOOTSI

42. In May 2025, TRI saw Impex exhibiting for the very first time at the Sweets & Snacks Expo, which was held in Indianapolis, Indiana. Prior to this year, despite TRI's heavy presence at the Sweets & Snacks expos, TRI had never seen Impex exhibiting at that trade show.

43. Impex's trade show booth was located in close proximity to TRI's booth, and displayed candy as a product offering under the TOOTSI mark.

44. Impex's trade show booth had a banner read "TOOTSI" in large, bold type. The word "IMPEX" appeared on banner in small, faint type beneath it, barely visible, as shown below.



45.     Impex's trade show booth also included the same TOOTSI Design Mark, referenced above in paragraph 32, that TRI opposed and complained about in 2005, which led to Impex's abandonment of its Canadian trademark application, as shown below.



**D.  Impex Significantly Expands Its Candy Offerings**

46.  Once a small seller of organic nut products, Impex is now a wholesale supplier of over 1,500 food products, including "nuts, dried fruits, seeds, grains, chocolates, candies, superfoods and more, in organic and conventional varieties." https://tootsi.com/en-GB/Home/Page/1 (last visited September 4, 2025).

47.  The product catalog that Impex gave to buyers at the 2025 Sweets & Snacks Expo included two pages listing its "NEW PRODUCTS," many of which are candies. Attached as **Exhibit B** is a copy of the cover and "NEW PRODUCTS" pages from Impex's 2025 product catalogue.

**E.  Impex Sold Tootsie Roll Midgee Products Online Under Its TOOTSI Banner**

48.  Impex offered for sale TRI's TOOTSIE ROLL midgees candies on its website under Impex's TOOTSI mark, as shown below. On its webpage, Impex displayed TRI's TOOTSIE ROLLS trademark in the same color and font that Impex used for its TOOTSI IMPEX mark,

thereby leading customers to believe that Impex is the source or manufacturer of the Tootsie Rolls product. The page also included the same TOOTSI Design Mark (in two places), referenced above in paragraph 32, that TRI had previously objected to as far back as 2005.



### IV. Failed Efforts to Resolve the Current Dispute and Resultant Harm to TRI

49. With full knowledge of TRI's objection to its planned use of TOOTSI for candy and snack products, as a result of the 2005 Canadian trademark opposition discussed above, Impex marched forward unabashedly, continuing and expanding its infringing use of TRI's TOOTSIE Marks.

50. Upon learning of Impex's actions, on June 11 and July 21, 2025, TRI sent cease and desist letters to Impex, but Impex has refused TRI's demands to stop infringing its famous TOOTSIE Marks.

51. Because of Impex's recent progressive encroachment on TRI's market, and its use of the nearly identical mark TOOTSI in connection with the sale of candy and snack products, the likelihood of confusion now looms large.

52. Despite TRI's well-established rights in its famous TOOTSIE Marks and Impex's knowledge of same, Impex embarked on plan in recent years to progressively encroach on TRI's

market using the same confusingly similar mark TOOTSI, in standard character form and in the same design that TRI objected to in 2005, in connection with the sale of a broad swath of products that directly compete with TRI in the United States.

53.     TRI's and Impex's products are offered for sale and sold in the same channels of trade to the same customers or consumers. Both TRI and Impex sell their products to wholesale customers, including without limitation to small retailers and re-baggers, through B2B transactions.

54.     The 2025 Sweet & Snacks Expo, at which both parties exhibited, was attended by wholesale buyers for retail stores, some of whom are customers of TRI and some of whom, on information and belief, are customers of Impex.

55.     Both TRI and Impex also sell their products directly to consumers, through online websites such as Amazon. Although Impex sells chocolates and candy under its YUPIK brand, its Amazon product listing states that the YUPIK product is manufactured by Tootsi Impex, Inc. (*See, e.g.,* Impex's Amazon listing for Dark Chocolate Covered Strawberries, attached as **Exhibit C**.) Also, the YUPIK products are sold on Impex's website, www.tootsi.com, under Impex's TOOTSI mark.

56.     At no time has TRI authorized or licensed Impex to use the TOOTSIE Marks in conjunction with the promotion and sale of its candy and snack products.

57.     On information and belief, Impex is intentionally engaged in activity that it knows is unlawful and constitutes infringement and dilution of the TOOTSIE Marks, and unfair competition under federal and state law.

58.     The natural, probable, and foreseeable result of Impex's wrongful conduct is consumer confusion, deception, and mistake in the marketplace, dilution of the value of the

- 16 -

TOOTSIE Marks, potential irreparable harm to TRI's reputation and goodwill, and likewise irreparable injury to TRI's relationships with existing and prospective consumers and wholesale buyers.

59.     TRI has sustained, and will continue to sustain, such damages as a result of Impex's wrongful conduct.

60.     On information and belief, Impex has engaged in these unlawful activities knowingly and intentionally—fully aware of, and yet with reckless disregard for, TRI's rights in its TOOTSIE Marks.

61.     On information and belief, by using the TOOTSI Marks, Impex intended to capitalize on the reputation, fame and goodwill embodied in the TOOTSIE Marks.

62.     Impex knowingly and willfully used the TOOTSIE Marks in connection with the advertisement, offering for sale, and sale of candy and snack products into the United States and the State of Illinois and over the Internet.

63.     Impex's candy and snack products directly compete with TRI's products and are marketed and sold to consumers through the same channels of trade. Both TRI and Impex sell B2B to wholesalers and directly to consumers.

64.     Impex is not affiliated with, authorized by, or sponsored by TRI, and has no authority to use the TOOTSIE Marks.

65.     On information and belief, Impex's adoption, use and expansion of use of reproductions, counterfeits, copies or colorable imitations of the TOOTSIE Marks was deliberate and intentional and with full knowledge of TRI's rights.

66.     Impex's adoption, use and expansion of use of reproductions, counterfeits, copies or colorable imitations of the TOOTSIE Marks was and is without TRI's authorization or consent.

67.     On information and belief, Impex's adoption, use and expansion of use of reproductions, counterfeits, copies or colorable imitations of the TOOTSIE Marks was and is with the intent and purpose of confusing, misleading and deceiving the public, and unfairly capitalizing on TRI's valuable initiative and goodwill.

68.     By adopting and using reproductions, counterfeits, copies or colorable imitations of the TOOTSIE Marks, and by trading on TRI's valuable goodwill, Impex has caused and is likely to cause confusion, mistake and deception of purchasers and potential purchasers as to the source or origin of Impex's products and as to the existence of an association, connection, or relationship between Impex and TRI.

69.     On information and belief, consumers who are dissatisfied with the quality of Impex's products will attribute their dissatisfaction to TRI, which will injure or is likely to injure the business reputation and goodwill of TRI.

70.     By adopting and using a copy or colorable imitation of the TOOTSIE Marks, and by trading on TRI's valuable goodwill, Impex has prevented TRI from building upon the goodwill established in the TOOTSIE Marks to its detriment.

71.     Impex's actions as recited herein have been undertaken in bad faith so as to compete unfairly with TRI.

72.     Impex has financially benefited from its infringement of the TOOTSIE Marks, and such financial benefit is directly attributable to the infringement.

73.     TRI is being irreparably injured and monetarily damaged by Impex's acts.  TRI has no adequate remedy at law.

74.     Impex's conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to TRI.

- 18 -

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

75.     TRI repeats and realleges paragraphs 1–74 above, as if fully set forth herein.

76.     This cause of action for trademark infringement arises under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and is for infringement of trademarks registered on the Principal Register of the USPTO.

77.     This cause of action is based on Impex's unauthorized use in commerce of a copy, counterfeit or colorable imitation of the TOOTSIE Marks on or in connection with the manufacture, shipment, import, sale, offering for sale, distribution, and/or advertising of candy and snack products.

78.     Impex has imported, sold, offered to sell, marketed, distributed, and advertised, and continues to import, sell, offer to sell, market, distribute, and advertise products bearing a copy, counterfeit or colorable imitation of the TOOTSIE Marks without TRI's authorization.

79.     Impex is and at all times has been aware of TRI's rights in the TOOTSIE Marks.

80.     Upon information and belief, Impex is willfully infringing and intentionally using the TOOTSIE Marks on or in connection with candy and snack products. Impex's willful, intentional, and unauthorized use of the TOOTSIE Marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of Impex's goods among the purchasing public.

81.     Impex's unlawful activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

82.     TRI has no adequate remedy at law. If this Court does not enjoin Impex's actions, TRI will continue to suffer irreparable harm to its reputation and the goodwill of its famous TOOTSIE Marks.

## COUNT II
## COMMON LAW TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(A))

83.     TRI repeats and realleges paragraphs 1–822 above, as if fully set forth herein.

84.     This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Impex's promotion, marketing, offering for sale, and sale of candy and snack products bearing a copy, counterfeit or colorable imitation of the TOOTSIE Marks has created and is creating a likelihood of confusion, mistake, and deception among the purchasing public as to the affiliation, connection, or association with TRI or as to the origin, sponsorship, or approval of Impex's candy and snack products by TRI.

86.     By using a copy, counterfeit or colorable imitation of the TOOTSIE Marks on candy and snack products, Impex has created a false designation of origin and a misleading representation of fact as to the origin or sponsorship of Impex's candy and snack products.

87.     Impex's trademark infringement, and false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of its candy and snack products to the purchasing public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

88.     TRI has no adequate remedy at law. If this Court does not enjoin Impex's actions, TRI will continue to suffer irreparable harm to its reputation and the goodwill of its famous TOOTSIE Marks.

## COUNT III
## DILUTION BY BLURRING (15 U.S.C. § 1125(C))

89.     TRI repeats and realleges paragraphs 1–888 above, as if fully set forth herein.

90.     Each of the TOOTSIE Marks was distinctive and famous at the time Impex began using the TOOTSI mark.

- 20 -

91.     Impex's activities complained of herein have diluted and will continue to dilute the distinctive quality of TRI's famous TOOTSIE Marks, in violation of 15 U.S.C. § 1125(c).

92.     As a direct and proximate cause of Impex's willful and deliberate conduct, TRI has been damaged by Impex's actions in an amount to be proven at trial.

93.     TRI has been and continues to be damaged by Impex's dilution of the distinctiveness of the TOOTSIE Marks in a manner that cannot be fully measured or compensated in economic terms, and for which there is no adequate remedy at law.

**COUNT IV**
**ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS §§ 510/1 ET SEQ.)**

94.     TRI repeats and realleges paragraphs 1–933 above, as if fully set forth herein.

95.     TRI conducts business in the State of Illinois under its TOOTSIE Marks. As shown above, TRI's TOOTSIE Marks became famous in the State of Illinois, and TRI uses each to identify its goods and to distinguish them from the goods of others.

96.     Impex sells its candy and snack products in Illinois. Those sales have caused, and will continue to cause, a likelihood of confusion or misunderstanding as to, among other things, the source, sponsorship, approval, connection, or affiliation of Impex's candy and snack products.

97.     Upon information and belief, Impex adopted and expanded its use of the TOOTSI mark with full knowledge of TRI's rights and with intent to trade on TRI's goodwill and reputation.

98.     Impex's actions described above constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1-7.

99.     Unless Impex's unauthorized activities are enjoined, there will continue to be confusion or misunderstanding concerning Impex's candy and snack products offered under the TOOTSI mark.

## COUNT V
## ILLINOIS TRADEMARK REGISTRATION AND PROTECTION ACT
## (INJURY TO BUSINESS REPUTATION; DILUTION)
## (765 ILCS §§ 1036/65)

100.    TRI repeats and realleges paragraphs 1–99 above, as if fully set forth herein.

101.    TRI conducts substantial business in the State of Illinois under its TOOTSIE Marks. As shown above, TRI's TOOTSIE Marks became famous in the State of Illinois prior to Impex's offering of its candy and snack products.

102.    Impex sells its candy and snack products in Illinois.

103.    Impex's actions have diluted the distinctive quality of TRI's TOOSIE Marks, resulting in irreparable harm to TRI, all in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/65.

104.    Upon information and belief, Impex adopted the mark TOOTSI for its candy and snack products with full knowledge of TRI's rights and with intent to trade on TRI's goodwill and reputation—i.e., Impex had a willful intent to trade on TRI's reputation.

105.    Unless Impex's unauthorized activities are terminated, it will continue to dilute the distinctive quality of TRI's TOOTSIE Marks and will inevitably diminish the value of said marks and the goodwill associated therewith.

## COUNT VI
## ILLINOIS COMMON LAW UNFAIR COMPETITION

106.    TRI repeats and realleges paragraphs 1–105 above, as if fully set forth herein.

107.    Impex's unauthorized use of TRI's TOOTSIE Marks is designed to unfairly compete with TRI, and at least to usurp any licensing fees TRI may make on sales of candy and related products sold under the TOOTSIE Marks, to the detriment of TRI.

108.     As a result of Impex's unauthorized use of TRI's TOOTSIE Marks described above, Impex has misappropriated valuable property rights of TRI, is trading on the goodwill symbolized by TRI's distinctive TOOTSIE Marks, and is thereby likely to confuse and to deceive members of the relevant purchasing public, all in violation of the common law of Illinois.

109.     Impex has willfully engaged in acts of unfair competition.

110.     Impex's acts described in this Count have caused, and will continue to cause, unless restrained by this Court, serious, irreparable injury for which TRI has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment as follows:

A.     That Tootsi Impex, Inc. and Tootsi Impex USA, Inc, and their respective officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined from:

      a.     Manufacturing, importing, marketing, advertising, offering for sale, distributing or selling candy and snack products or any product under the TOOTSI mark or any mark used in conjunction with the TOOTSI mark;

      b.     Using the TOOTSI mark or any confusingly similar mark in connection with the importation, advertisement, promotion, shipment or sale of candy or snack products;

      c.     Exhibiting at the Sweet & Snacks Expo or any other trade show in the candy industry, under the name TOOTSI;

      d.     Using the URL www.tootsi.com, or any confusingly similar URL;

e.      Using any reproduction, counterfeits, copies, or colorable imitations of the TOOTSIE Marks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any products that are not genuine Tootsie Roll products or are not authorized by TRI;

f.      Passing off, inducing, or enabling others to sell or pass off any product as a genuine Tootsie Roll product or any other product produced by TRI that is not TRI's or not produced under the authorization, control, or supervision of TRI and approved by TRI for sale under the TOOTSIE Marks;

g.      Committing any acts intended to cause customers or consumers to believe that Impex's candy and snack products are those sold under the authorization, control, or supervision of TRI, or are sponsored by, approved by, or connected with TRI;

h.      Further infringing the TOOTSIE Marks and damaging TRI's valuable goodwill;

i.      Otherwise competing unfairly with TRI in any manner; and

j.      Shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for TRI, not authorized by TRI to be sold or offered for sale, and which bear any Tootsie Roll-owned trademark, including the TOOTSIE Marks, or any reproductions, counterfeits, copies, or colorable imitations thereof.

B.      Directing Impex, within seven (7) days after service of the judgment with notice of entry thereof, to remove the TOOTSI mark from all signage and transportation vehicles used in connection with its business;

C.      Directing Impex, within twenty-one (21) days after service of judgment with notice of entry thereof upon them, to file with the Court and serve upon TRI a written report under oath setting forth in detail the manner in which Impex has complied with Paragraphs A-B, *supra*;

D.      Awarding TRI its actual damages and/or lost profits and/or defendants' profits, trebled pursuant to 15 U.S.C. § 1117(a) and (b);

E.      Awarding TRI its actual damages and/or lost profits and/or defendants' profits, trebled, pursuant to Illinois statutory and common law, arising out of Impex's acts of unfair competition and deceptive business practices;

F.      Awarding TRI its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), the statutory and common law of the State of Illinois, and/or any other applicable statute or law;

G.      Awarding TRI interest, including pre-judgment interest on the foregoing sums; and

H.      Awarding any and all other relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.


Respectfully submitted,

Date: September 11, 2025

*/s/ John L. Strand*
John L. Strand (N.D. Ill. Bar No. 90785709)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue

Boston, MA 02210
617.646.8000 Phone
617.646.8646 Fax

Robert T. Maldonado (*pro hac vice* to be filed)
rmaldonado@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue
New York, NY 10158
212.697.7890 Phone
617.646.8646 Fax

John W. McGrath (*pro hac vice* to be filed)
jmcgrath@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C
601 Massachusetts Avenue NW
Washington, DC 20001
617.646.8000 Phone
617.646.8646 Fax

*Attorneys for Plaintiff*